**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.K. HARRIS & COMPANY, LLC, a South Carolina limited liability company,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STEVEN H. KASSEL, an individual; and FIRSE TAX, INC., a California Corporation, d/b/a TAXES.COM,<br><br>　　　　Defendants.<br>_____/ | No. 02-0400 CW<br><br>ORDER GRANTING RECONSIDERATION AND AMENDING ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION |

　　　Plaintiff J.K. Harris & Company, LLC moved for a temporary restraining order (TRO) and then a preliminary injunction enjoining Defendants from 1) using the trade name "J.K. Harris" on Defendants' "taxes.com" web site; 2) publishing defamatory, untrue or misleading information about Plaintiff; 3) using HTML code and computer programming techniques to divert Internet users looking for Plaintiff's web site to Defendants' web site; and 4) using any editorial position at Internet directories to promote Defendants' business and interfere with Plaintiff's business.  The Court granted Plaintiff's request for a TRO and then, in an Order dated March 22, 2002, the Court granted in part and denied in part Plaintiff's motion for a preliminary injunction.  The Court enjoined Plaintiff from "using more of Plaintiff's trade name than is reasonably necessary to identify that it is Plaintiff's services being described" and from making or disseminating certain identified allegedly false statements.

March 22, 2002 Order at 21-22.  Defendants then requested that they and amicus curie the Electronic Frontier Foundation (EFF) be granted leave to file a motion for reconsideration.  The Court granted Defendants' request as to the issues raised by EFF's brief in support of Defendants' request for reconsideration.  After considering all of the papers filed by the parties and by the amicus curie, the Court now GRANTS Defendants' motion for reconsideration.  The Court VACATES its March 22, 2002 Order and substitutes this Order.  Specifically, the Court withdraws its prior analysis of New Kids on the Block v. News Am. Publ'g Co., 971 F.2d 302 (9th Cir. 1992) located on pages 10 to 12 of the Court's March 22, 2002 Order and replaces it with a modified analysis located on pages 11 to 13 of the current Order.  The Court also withdraws as moot its prior discussion of initial interest confusion located on pages 12 to 14 of the March 22, 2002 Order.  Finally, the Court modifies the scope of preliminary injunctive relief in light of its new analysis.

BACKGROUND

A.   The Parties

Plaintiff claims to be the largest tax representation and negotiation company in the United States.  It specializes in negotiating with the IRS to eliminate or reduce assessed tax liability and to work out favorable payment terms.  Declaration of Monica Linder (Linder Dec.), ¶ 4.  Defendants are direct competitors with Plaintiff in the business of tax representation.  Id. ¶ 5.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

B.   Facts Relevant to False Representation Claims

Both Plaintiff and Defendants advertise their services on the Internet.  Plaintiff's universal resource locator (URL) is www.jkharris.com.  Defendants' URL is www.taxes.com.  Defendants have published on their web site unfavorable information about Plaintiff.  Prior to the issuance of the temporary restraining order in this case, Defendants' web site contained a page entitled "JK Harris Employees Tell of Wrongdoing While Complaints Pile Up."  On this page, Defendants describe a federal investigation of Plaintiff, criticize Plaintiff's business practices, and republish anonymous statements about Plaintiff from individuals identified as former customers or former employees of Plaintiff.  Defendants also solicit information critical of Plaintiff for publication on their web site.  Plaintiff contends that numerous statements attributable both to Defendants and to those anonymously contributing to Defendants' web site are false and misleading.

C.   Facts Relevant to Consumer Confusion Claim

Many consumers looking for services on the Internet use a "search engine" to identify the URL of the company they are seeking.  When a user enters a name into a search engine, the search engine provides a list of web sites that contain that name and, presumably, the information sought by the user.  Plaintiff alleges that Defendants have manipulated the web site architecture of taxes.com so that when a consumer searches for Plaintiff's web site, Defendants' web site is among those web sites displayed.  Specifically, Plaintiff contends that this was

done by a) "creating keyword density" using Plaintiff's trade
name and permutations thereof; b) creating "header Tags" and
"underline Tags" around sentences that use Plaintiff's trade
name; c) using Plaintiff's trade name as a "keyword" in numerous
areas of the web site;
d) using various "hot links" to web sites with information about
Plaintiff.  Declaration of Tony D. Spencer (Spencer Dec.) ¶ 5;
Supplemental Declaration of Tony D. Spencer (Spencer Supp. Dec.)
¶ 4.

On October 23 and 24, 2001, Plaintiff conducted a series of
searches for the name "JK Harris" on eleven different Internet
search engines.  In one of eleven searches, Defendants' web site
was the first one listed.  On most of the searches, a link to
Defendants' web site under the title "Complaints about JK Harris
Pile Up" was listed among the first ten links.  On March 11,
2002, Plaintiff conducted an identical search.  Defendants' web
site appeared among the first ten web sites listed on all eleven
search engines.

D.   Editor Position

Defendant Kassel is an editor of the Open Directory Project
(ODP).  The ODP produces a comprehensive directory of web sites
by relying on numerous volunteer editors who rank and decide
which web sites are useful resources for the web public.

LEGAL STANDARD

"The basis for injunctive relief in the federal courts has
always been irreparable injury and the inadequacy of legal
remedies."  <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 312

United States District Court
For the Northern District of California

(1982).   To establish entitlement to a preliminary injunction, a moving party must demonstrate either:

> (1)  a combination of probable success on the merits and the possibility of irreparable harm, or
>
> (2)  that there exist serious questions regarding the merits and the balance of hardships tips sharply in its favor.

Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987); California Cooler, Inc. v. Loretto Winery, Ltd., 774 F.2d 1451, 1455 (9th Cir. 1985); see also William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86, 88 (9th Cir. 1975); County of Alameda v. Weinberger, 520 F.2d 344, 349 (9th Cir. 1975).   The test is a "continuum in which the required showing of harm varies inversely with the required showing of meritoriousness."   Rodeo Collection, 812 F.2d at 1217 (quoting San Diego Comm. Against Registration and the Draft v. Governing Bd. of Grossmont Union High Sch. Dist., 790 F.2d 1471, 1473 n.3 (9th Cir. 1986)).   To overcome a weak showing of merit, a plaintiff seeking a preliminary injunction must make a very strong showing that the balance of hardships is in its favor. Rodeo Collection, 812 F.2d at 1217.

## DISCUSSION

Plaintiff seeks injunctive relief under several distinct legal theories.   Plaintiff asserts a claim under the Lanham Act both because Defendants' conduct creates "initial interest confusion" among consumers looking for Plaintiff's services and because, Plaintiff contends, Defendants have published false and misleading representations of fact on their web site.   15 U.S.C.

United States District Court
For the Northern District of California

§ 1125(a).

Plaintiff also bases its request for injunctive relief on alleged violations of State laws prohibiting unfair competition and false and misleading advertising.  <u>See</u> Cal. Bus. & Prof. Code §§ 17200, 17500.

Lastly, Plaintiff brings a claim for defamation, contending that the false statements published on Defendants' web site are injurious to Plaintiff's reputation.

D.   Lanham Act

Section 43 of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, of any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion or to cause mistake or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125.

1.   Initial Interest Confusion

The Ninth Circuit has held that "initial interest confusion" is actionable under section 43 of the Lanham Act. Initial interest confusion "occurs when a consumer is lured to a product by its similarity to a known mark, even though the consumer realizes the true identity and origin of the product before consummating a purchase."  <u>Eli Lilly & Co. v. Natural</u>

United States District Court

For the Northern District of California

1   Answers, Inc., 233 F.3d 456, 464 (7th Cir. 2000); see also

2   Brookfield Communications, Inc. v. West Coast Entm't Corp., 174

3   F.3d 1036, 1062 (9th Cir. 1999).

4       In Brookfield Communications, the court enjoined the

5   defendant from using the plaintiff's trademarked term in its

6   HTML code.  Although HTML code is not visible to consumers and,

7   therefore, is not likely to cause consumer confusion, the use of

8   trademarked terms in a web site's hidden code "will still result

9   in what is known as initial interest confusion."  Brookfield

10  Communications, 174 F.3d at 1062.[1]  The court reasoned that

11          Web surfers looking for Brookfield's "MovieBuff"
            products who are taken by a search engine to
12          "westcoastvideo.com" will find a database similar
            enough to "MovieBuff" such that a sizeable number of
13          consumers who were originally looking for Brookfield's
            product will simply decide to utilize West Coast's
14          offerings instead. Although there is no source
            confusion in the sense that consumers know they are
15          patronizing West Coast rather than Brookfield, there is
            nevertheless initial interest confusion in the sense
16          that, by using "moviebuff.com" or "MovieBuff" to divert
            people looking for "MovieBuff" to its web site, West
17          Coast improperly benefits from the goodwill that
            Brookfield developed in its mark.

18  Id.[2]

19      Plaintiff here alleges that Defendants have constructed the

20  taxes.com web site so that web surfers searching for Plaintiff's

21

22      [1]The Brookfield Communications court used the term

23  "metatags" to refer to "HTML code not visible to Web users but
    used by search engines in determining which sites correspond to
    the keywords entered by a Web user."  174 F.3d at 1061-1062

24  n.23.

25      [2]Defendants' argument that initial interest confusion is

26  only actionable when combined with a separate trademark
    infringement claim is unpersuasive.  The above-quoted rationale
    from Brookfield makes clear that initial interest confusion is a

27  distinct harm, separately actionable under the Lanham Act.

28                                  7

web site will be referred to Defendants' web site as well.
Plaintiff alleges that Defendants have accomplished this purpose
by applying a "strategic combination of computer programming
techniques," including excessive uses of Plaintiff's trade name,
the use of "header tags" and "underline tags" around sentences
containing Plaintiff's trade name, and the use of larger fonts
and strategic placement of sentences containing Plaintiff's
trade name on Defendants' web site.

The alleged result of Defendants' conduct is that web users
who search for Plaintiff's trade name are simultaneously given
an opportunity to visit Defendants' web site by clicking on a
link that stated, prior to the issuance of the TRO in this
action, "Complaints about JK Harris Pile Up."  A reasonable
consumer would not believe that Plaintiff is the sponsor of this
negative publicity, but might choose to investigate these
charges by visiting Defendants' web site before securing
Plaintiff's tax representation services.  Once at www.taxes.com,
potential consumers are provided with what Plaintiff alleges are
false and misleading comments about Plaintiff's services.  Web
users might then decide that because of the negative comments
about Plaintiff they should secure tax representation services
from Defendants, or, they might simply decide that the services
offered by Plaintiff and Defendants are sufficiently similar
that "it is not worth the trouble" of returning to Plaintiff's
web site.  Id. at 1064.

In this way, Plaintiff alleges that its potential customers
may be diverted to Defendants' services.  As was the case in

8

United States District Court

For the Northern District of California

Brookfield Communications, consumers will immediately realize that they are not patronizing Plaintiff.  Nevertheless, the alleged use of Plaintiff's trademark in the HTML code and in the content of Defendants' web site allows Defendants initially to divert Plaintiff's potential consumers to its web site.

Defendants contend that their intent is not to confuse customers, but to warn them about business practices which Defendants contend are harmful to consumers.  Defendants argue that their use of Plaintiff's trademark for this purpose is "nominative" use and, therefore, permissible.[3]

In New Kids on the Block v. News Am. Publ'g, Inc., 971 F.2d 302, 308 (9th Cir. 1992), the Ninth Circuit articulated a three part test for determining when an unauthorized use of an undisputed trademark is permissible.  The court stated

> where the defendant uses a trademark to describe the plaintiff's product, rather than its own, we hold that a commercial user is entitled to a nominative fair use defense provided he meets the following three requirements: First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

971 F.2d at 308.  In a footnote elaborating on this standard for "nominative fair use," the court stated, "Thus, a soft drink competitor would be entitled to compare its product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's

---

[3]Nominative use occurs when "the only word reasonably available to describe a particular thing is pressed into service."  New Kids on the Block, 971 F.2d at 308.

distinctive lettering." Id. n.7.

In Playboy Enters., Inc. v. Welles, 279 F.3d 796 (9th Cir. 2002), the court applied the New Kids on the Block three part test to the request of plaintiff Playboy Enterprise Inc. (PEI or Playboy) to enjoin the defendant Welles from using PEI's trademark in the metatags in Welles' web site. In that case, the court held that Welles could continue to use Playboy's trade names in her metatags because those trademarks actually described the services provided by Welles. "There is no other way that Ms. Welles can identify or describe herself and her services . . . ." Welles, 279 F.3d at 802. Although the facts of Welles are inapposite here (Defendants need not use Plaintiff's trade name to identify Defendants' own products), the Ninth Circuit noted that its holding was intended to protect those who criticize the holder of a well-known trademark as well as those, like Welles, whose notoriety is tied to it. "Similarly, someone searching for critiques of Playboy on the Internet would have a difficult time if Internet sites could not list the object of their critique in their metatags." Id. at 804.

Plaintiff's request for an order enjoining Defendants from using the trade name "J.K. Harris" on their web site or in the HTML code for their web site must be evaluated pursuant to the New Kids on the Block three part test.

> In cases in which the defendant raises a nominative use defense, the above three-factor test should be applied instead of the test for likelihood of confusion set forth in Sleekcraft . . . . When a defendant uses a trademark nominally, the trademark will be identical to

10

United States District Court

For the Northern District of California

> the plaintiff's mark, at least in terms of the words in
> question. Thus, application of the <u>Sleekcraft</u> test,
> which focuses on the similarity of the mark used by the
> plaintiff and the defendant, would lead to the
> incorrect conclusion that virtually all nominative uses
> are confusing.

<u>Welles</u>, 279 F.3d at 801. In this case, unlike <u>Brookfield Communications</u>, Defendants are using Plaintiff's mark "to describe the plaintiff's products." <u>New Kids on the Block</u>, 971 F.2d at 308. Thus, if their use satisfies the three prongs of the <u>New Kids on the Block</u> test, it is permissible.[4]

Defendants' use of the trade name J.K. Harris satisfies all three prongs of the <u>New Kids on the Block</u> test.[5] The first prong is met because, like the singing group New Kids on the Block and the company Playboy Enterprises, the tax representation service J.K. Harris is simply "not readily identifiable without use of the mark." <u>New Kids on the Block</u>, 971 F.2d at 308. The third prong is met because it is clear from the context of Defendants' web site that Plaintiff has not sponsored or endorsed the information provided there.

While it is a closer question, the second prong of the <u>New Kids on the Block</u> test is also met. That prong requires that

---

[4]In <u>Brookfield Communications</u>, on the other hand, the defendant used the plaintiff's trade name without referring to the true owner of the mark. 174 F.3d at 1066. The defendant's use was consequently analyzed pursuant to <u>Sleekcraft</u> and the court enjoined the continued use of the plaintiff's trade name.

[5]In a later portion of this order, the Court addresses Plaintiff's allegation that Defendants have published false information about Plaintiff on their web site. Here, however, the Court is only addressing Plaintiff's request to enjoin Defendants from all uses of the name "J.K. Harris" as proscribed by the Lanham Act.

11

United States District Court

For the Northern District of California

"only so much of the mark or marks be used as is reasonably necessary to identify the product or services."  971 F.2d at 308.  This requirement derives from a concern that a defendant's use of the plaintiff's mark not exceed its legitimate referential purpose.  Toho Co., Ltd. v. William Morrow & Co., Inc., 33 F. Supp. 2d 1206, 1211 (C.D. Cal. 1998).  What is reasonably necessary to identify the plaintiff's products or services differs from case to case.  Cairns v. Franklin Mint Co., 292 F.3d 1139, 1154 (9th Cir. 2002).  Here, there is no allegation that Defendants used anything other than J.K Harris's trade name.  Cf. New Kids on the Block, 917 F.2d at 308 n.7 ("[A] soft drink competitor would be entitled to compare its product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive lettering."); Toho Co., Ltd., 33 F. Supp. 2d at 1209, 1211 (finding this requirement not met because the defendant employed the plaintiff's distinctive lettering style).  Rather, Plaintiff complains that Defendants' web pages used its trade name frequently and in a manner designed to call attention to that name, for example by placing it at the beginning of a web page or underlining it.  While the evidence submitted to the Court demonstrates that Defendants' web site does contain frequent references to J.K. Harris, these references are not gratuitous; rather, Defendants' web site refers to J.K. Harris by name in order to make statements about

12

United States District Court

For the Northern District of California

it.[6]  This referential use of Plaintiff's trade mark is exactly what the nominative fair use doctrine is designed to allow.  See New Kids on the Block, 971 F.2d at 306-07 ("Much useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark.").  Similarly, while the evidence submitted to the Court demonstrates that Defendants often made the J.K. Harris name visually obvious, this is not unreasonable, because criticizing J.K. Harris was one of the primary objectives of the web pages.  Thus, Defendants' referential use of the J.K. Harris trade name, even though frequent and obvious, satisfies the second prong of the New Kids on the Block Test, in that "only so much of the mark or marks [are] used as is reasonably necessary to identify the product or services."  New Kids on the Block, 971 F.2d at 308.

Because Defendants' use of the J.K. Harris trade name satisfies all three prongs of the New Kids on the Block test, Plaintiff has not demonstrated a probability of success on the merits.  Therefore, Plaintiff is not entitled to a preliminary injunction limiting Defendants' use of the J.K. Harris trade name.

2.    False and Misleading Advertising

_____

[6]Here, Defendants' repeated use of the J.K. Harris trade name is part of the content of their web site and has a referential purpose.  Thus, this case does not raise the issue contemplated in Welles, 279 F.3d at 804, of a web site that repeatedly uses the trademark in metatags that are invisible to the web user.

13

**United States District Court**
For the Northern District of California

1    Plaintiff has also moved to enjoin any "statement

2  concerning plaintiff J.K. Harris . . . that is defamatory,

3  untrue, or misleading and that is known, or by the exercise of

4  reasonable care should be known, to be defamatory, untrue or

5  misleading."  Whether any of the content on Defendants' web

6  sites may be enjoined as false and misleading is separate and

7  distinct from the question of whether Plaintiff is likely to

8  succeed on its claim that Defendants' use of Plaintiff's trade

9  name causes initial interest confusion among consumers.

10    Defendants argue that this Court may not enjoin any of the

11  content on their web site because such an order would constitute

12  a prior restraint on speech in violation of the First Amendment.

13  Organization for a Better Austin v. Keefe, 402 U.S. 415, 419

14  (1971) (an injunction is a "prior restraint on expression [that]

15  comes to this Court with a 'heavy presumption' against its

16  constitutional validity") (citing Carroll v. President and

17  Comm'rs of Princess Anne, 393 U.S. 175, 181 (1968); Bantam

18  Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963)).

19    Plaintiff, on the other hand, contends that the presumption

20  against prior restraints is inapplicable because the speech in

21  question here is commercial speech and the Supreme Court has

22  made clear that false or misleading commercial speech "is not

23  protected by the First Amendment at all."  City of Cincinnati v.

24  Discovery Network, Inc., 507 U.S. 410, 434 (1993); see also

25  Central Hudson Gas & Electric Corp. v. Public Service Comm., 447

26  U.S. 557, 566 (1980) (misleading commercial speech is beyond the

27  reach of the First Amendment).

28                                14

**United States District Court**
For the Northern District of California

It is true that false or misleading commercial speech may be prohibited entirely.  In re R.M.J., 455 U.S. 191, 203 (1982). It is also true that the Lanham Act specifically proscribes false statements made in a commercial advertisement that have a tendency to deceive a substantial segment of the audience. Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).  A party who has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to another or by a lessening of the goodwill associated with its products, may seek an injunction.  See id.; U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1042 (9th Cir. 1986).  However, these principles do not resolve the permissible breadth of any injunction entered pursuant to this section of the Lanham Act.

In U-Haul Int'l, for example, the Ninth Circuit upheld a permanent injunction against advertisements "found to be false and deceptive," under the Lanham Act.  793 F.2d at 1042. However, the Ninth Circuit modified the injunction to avoid First Amendment concerns.  The court noted that the injunction, as it was written, could have been read to proscribe truthful, as well as deceptive, speech.  Id.  The court, therefore, narrowed the injunction to assure its limitation to representations specifically "found to be false and deceptive in this proceeding" by the district court.  Id. at 1042-1043. Similarly, in Castrol v. Pennzoil Co., 987 F.2d 939 (3d Cir. 1993), the court upheld a permanent injunction prohibiting publication of false commercial speech.  The statements that

were enjoined, however, were the specific statements "which the court found to be literally false." Id. at 949.

Both U-Haul Int'l and Castrol indicate that although false commercial speech may be enjoined, any such injunction must be limited to those statements likely to be in violation of the Lanham Act. Plaintiff here seeks a broad injunction against "defamatory, untrue, or misleading" statements. Such an injunction is overbroad because it would reach more than the specific statements claimed to be in violation of the Lanham Act. See Castrol, 987 F.2d at 949. Consequently, the Court will not extend the temporary restraining order prohibiting the publication of "any statement concerning Plaintiff J.K Harris that is false or defamatory and that is known, or by the exercise of reasonable care should be known, to be false or defamatory."

Notwithstanding the broad language of Plaintiff's application for injunctive relief, it identifies specific statements previously published on Defendants' web site that Plaintiff contends are false, as follows:

a) "The [J.K. Harris] sales force is not trained for the job of helping clear up the IRS debt, but to sell the client on peace of mind . . . ."

b) "[O]nce most clients are on board at J.K. Harris they are simply ignored . . . ."

c) "The taxpayer was being mislead as to what could be accomplished and in what time frame."

d) "I retained the services of J.K. Harris & Co to represent me before the IRS and nothing has been done. Meanwhile the problems continue."

e) "The JK Harris Co. . . . . scammed us with no

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

results and no refund after initial retainer."

f)    "The [J.K. Harris] co. is fraudulent and a scam and needs to be uncovered.  They are worthless."

g)    "The sales force is largely high pressure salesmen whose only job is to get your name on a contract and pick up a check."

h)    "It is highly unlikely that you will speak with a licensed tax pro . . . until long after you have paid JK Harris."

i)    "I have spoken to hundreds of current and former JK Harris clients who have never even spoken with a licensed tax pro despite having paid thousands of dollars."

j)    "John Klintworth Harris was a CPA licensed in both North Carolina and South Carolina.  After being faced with disciplinary proceedings he opted to turn in his licenses to practice in both states, perhaps sensing they would take them away if he didn't act first."

k)    "Do you want to work with a company run by a man who can't even keep his CPA licenses????"

l)    "I have spoken to numerous tax professionals all of whom have said it is extremely rare for any CPA to ever turn in his/her license.  All stated that the only reason a CPA would ever do that is to avoid having the license taken away involuntarily."

m)    "If you are a current client of JK Harris . . . [y]ou are in for a long wait and nothing getting done with your case."

n)    "They [J.K. Harris] have to farm out their tax returns because they don't have the man power to process what they already have."

o)    "There are consultants working for that company right now that will sell you an [Offer In Compromise] whether you qualify or not."

Each of these representations may be susceptible to being found "literally false, either on its face or by necessary implication, or . . . literally true but likely to mislead or

17

confuse consumers." <u>Southland Sod Farms</u>, 108 F.3d at 1139.
Each of these statements, therefore, may be actionable under the
Lanham Act.  Plaintiff has submitted a declaration sworn under
penalty of perjury that these statements are, in fact, false.
In response, Defendant Kassel has submitted a declaration
stating that the information "I myself gathered . . . is
publically available and factually correct."  Declaration of
Steven H. Kassel (Kassel Dec.), ¶ 2.  As to the remainder of the
information about Plaintiff on Defendants' web site, Kassel
declares only that he is "informed by the persons submitting
this information that it is factually true."  <u>Id.</u>

     The Court will not enjoin those statements Defendant Kassel
has declared, based on personal knowledge, to be factually
accurate.  Plaintiff cannot show a likelihood of success in
proving that these statements are proscribed by the Lanham Act
because the declarations from the parties are of equal weight
and directly contradictory.  Plaintiff has shown a serious
question going to the merits of whether Defendants have violated
section 43 of the Lanham Act by publishing false representations
of fact misleading to the public.  However, because enjoining
these statements prior to an adjudication of their truth or
falsity would suppress arguably protected speech, the Court
concludes that the balance of hardships does not tip decidedly
in Plaintiff's favor.[7]

---

     [7]Statements g), h), i), j), k), and l) above were posted by
Defendants.  Defendant Kassel cannot have personal knowledge of
                                              (continued...)

**United States District Court**

For the Northern District of California

United States District Court

For the Northern District of California

1      Those statements that Plaintiff has declared to be false

2  that were submitted to Defendants by third parties are enjoined.[8]

3  The only evidence in the record indicates that these statements

4  are false and misleading and prohibited by the Lanham Act.

5  These statements, moreover, are harmful to the business

6  reputation and good will of Plaintiff.  Plaintiff has shown both

7  a serious question as to whether these statements are false and

8  that the balance of hardships tips in its favor.  Because

9  Defendants have submitted no admissible evidence that these

10  statements are true or, for some other reason, constitutionally

11  protected, they suffer no hardship in having these statements

12  enjoined.

13      Therefore, Plaintiff is entitled to an injunction

14  prohibiting the dissemination of all of the statements listed

15  above with the exception of statements g), h), j) and k).[9]

16  _____

17      [7](...continued)
   the truth or falsity of statements i) and l) because the truth
18  or falsity of those statements depends on whether the "numerous
   tax professionals" and "hundreds of current and former JK Harris
19  clients" with whom Defendant Kassel allegedly spoke were
   truthful.  Therefore, Defendant Kassel's declaration is
20  sufficient to rebut the alleged falsity of statements g), h),
   j), and k).  Those four statements are not enjoined at this
21  time.

22      [8]Statements a) through f), m), n) and o) were submitted by
   third parties.  There is no admissible evidence that these
23  statements are true.  These statements are therefore enjoined.

24      [9]Plaintiff's request for injunctive relief pursuant to
   California's prohibition on false and misleading advertising is
25  duplicative of its request under section 43 of the Lanham Act.
   Under Cal. Bus. & Prof. Code § 17500, Plaintiff is entitled to
26  the same relief enjoining specific allegedly false and
   misleading statements to which it is entitled under the Lanham
27                                              (continued...)

28                              19

**United States District Court**
For the Northern District of California

B.   California Statutory Claims

Plaintiff's causes of action under California Business and Professions Code sections 17200 and 17500 largely restate its claims under the Lanham Act.  Plaintiff contends that Defendants have engaged in "unfair" business practices within the meaning of
§ 17200 because they purposely constructed their web site to create "initial interest confusion" and because Defendant Kassel has used his editorial position at Internet directories to promote Defendants' business and interfere with Plaintiff's business.

The first contention has been addressed above.  The second contention is unpersuasive.  Plaintiff has submitted a declaration that states that Defendant Kassel is one of "numerous volunteer editors who rank and decide which web sites are useful resources for the web public."  Spencer Dec., ¶ 6. Plaintiff contends that this position imposes a duty on Defendant Kassel to edit submissions to the ODP in an impartial manner.  Plaintiff further contends that Defendant Kassel breached this duty by failing to move Plaintiff's tax representation service to the proper category after Plaintiff

---

[9](...continued)
Act.  Similarly, Plaintiff also alleges that several of the statements detailed above are defamatory.  Plaintiff's request to enjoin defamatory statements by Defendants is also rendered moot by the Court's holding on the Lanham Act claim.

**United States District Court**
For the Northern District of California

had failed to submit it properly.[10]   Plaintiff's declaration asserts that this conduct has resulted in "completely eliminating J.K. Harris' web site from the Tax Negotiation and Representation and Tax Preparation directories."   Id.

Plaintiff's allegation that Defendant Kassel has misused his editorial position does not justify injunctive relief. Plaintiff has failed to submit sufficient evidence to create a serious question concerning Defendant Kassel's alleged breach of his alleged duty as an ODP editor.   Nor has Plaintiff shown how the alleged breach damaged Plaintiff.   Plaintiff has submitted no evidence substantiating its claim of "complete elimination" from the appropriate directories.

CONCLUSION

For the foregoing reasons, the temporary restraining order issued by this Court on February 6, 2002 is vacated. Plaintiff's application for a preliminary injunction is granted in part and denied in part.

It is ORDERED that, pursuant to the Lanham Act § 43, 15 U.S.C. § 1125(a), Defendants, and their agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, are enjoined and restrained from using on or in Defendants' web site (www.taxes.com) or making, disseminating, or causing to be made or disseminated to the public, through

---

[10]Plaintiff also contends that Defendant Kassel breached his alleged duty as an ODP editor by adding news articles critical of Plaintiff to the Tax Negotiation and Representation category. This accusation is unsubstantiated.

Defendants' web site, or in any newspaper, other publication, or advertising device, by public outcry or proclamation, or in any other manner whatever, the allegedly false statements listed on pages seventeen and eighteen of this Order, with the exception of statements g), h), j) and k).


Dated: 3/28/03                          /s/ CLAUDIA WILKEN
                                        _____
                                        CLAUDIA WILKEN
                                        United States District Judge

United States District Court
For the Northern District of California